(No. 6509 ▉▉▉▉▉▉▉▉▉)

LESLIE H. KENT, Claimant, *v.* STATE OF ILLINOIS, Respondent.

*Opinion filed September 11, 1978.*

BEAUPRE and VOGT, Attorneys for Claimant.

WILLIAM J. SCOTT, Attorney General; WILLIAM E. WEBBER, Assistant Attorney General, for Respondent.

POLOS, C.J.

Claimant, Leslie H. Kent, seeks to recover the sum of $3,020.00, representing four months wages as an Administrative Assistant I at Manteno State Hospital from January 25, 1970, through May 27, 1970. Claimant also seeks additional damages claimed to have been suffered by him as a result of his failure to be paid during the period in question.

The essential facts are not in dispute. In December, 1969, Claimant was 33 years old, the father of five children, and was looking for employment. He applied for work at the Kankakee State Hospital. The Assistant Personnel Director at Kankakee State Hospital told him there was no opening there, but referred him to Cecil Martin, the Personnel Director at Manteno State Hospital.

On December 20, 1969, Claimant went to Manteno State Hospital, and saw Cecil Martin. Martin told Claimant that they had an opening for Administrative Assistant I in the hospital's so-called "Gateway Program." Claimant filled out a job application form, and Martin asked him to supply a resume.

Martin told Claimant to return on December 28, 1969, to be interviewed by William H. Morgan, the Assistant Director of the Gateway Program.

On December 28, 1969, Claimant returned and was interviewed by Morgan, who explained the nature of the work he would be doing, took him through some of the wards, and told him to return on January 4, 1970, to be interviewed by Jack Emmons, the Program Director.

Claimant spent January 4 and 5, 1970, at the hospital being interviewed by Morgan and Emmons. At the end of January 5, 1970 visit, both Morgan and Emmons told Claimant that they wanted to hire him as an Administrative Assistant I. In Claimant's presence they called Martin, the Personnel Director, and told him of their decision. Claimant immediately went to Martin's office, and Martin told him that it would take approximately two weeks to complete the paper work necessary to hire him.

On January 18, 1970, Claimant returned to the hospital and told Martin that he had turned down two other jobs, and needed to start work because of pressing financial obligations. Claimant testified that Martin told him that he was going to Springfield the following week and while there, was going to try to work out the necessary details and paper work which would enable him to start work immediately.

Claimant said that on January 24, 1970, Morgan called him at his home and told him that while Martin did not have all the details worked out, he should come to work the next day.

Claimant reported for work the following morning, and worked as an Administrative Assistant I in the Gateway Program from January 25, 1970, until May 27, 1970, when he quit because he had never received a paycheck.

The Gateway Program had a staff of 450 persons, and charged with the medical and psychiatric care of 1,900 patients. Claimant served as an Administrative Assistant to Emmons, the Program Director, and Morgan, the Assistant Program Director. The minimum salary for Administrative Assistant I at the time was $755.00 per month.

Claimant said that during this period he constantly inquired as to when his pay was going to start, and was told that Mr. Martin was having trouble getting the paper work through Springfield. He was never told that he was not going to be paid, and he never agreed to work without pay.

In March, 1970, at the direction of Emmons, Morgan and Martin, Claimant took a Merit System examination for the position of Administrative Assistant I.

He did not pass the exam, and retook it in July, 1970, and passed.

William Morgan, the Assistant Director of the Gateway Program, testified that they needed clearance from Springfield to hire Claimant, and that Martin, the Director of Personnel, was to obtain that clearance. Morgan said that on Friday, January 21, 1970, Martin went to Springfield, but did not return during the working day. Morgan said he called Martin at his home over the weekend and told him that he would like Claimant to start work on Monday, January 24, 1970.

Morgan said that Martin replied that he had only verbal authorization to hire Claimant, but that written clearance would come Tuesday or Wednesday. Morgan said he then called Claimant, and told him,

". . . that I had verbal assurance that this authorization, whatever it was, was coming, that we had nothing in writing and I could guarantee nothing; but if he was interested in coming in and taking that degree of chance we would start the next day."

Morgan said that after Claimant reported for work, he repeatedly asked about his pay, and that he would in turn contact Martin. Morgan said that on several occasions Martin told him that he had received assurance from Springfield that the problem would be cleared up shortly.

It is clear that Claimant was never lawfully appointed as an Administrative Assistant I in accordance with the Personnel Code of the State of Illinois. Claimant nevertheless contends that he is entitled to cover compensation for the services which he performed for the State, at the request of the supervisory employees of the Department of Mental Health. Respondent's position is that there is no basis for recovery in that Claimant never entered into an employment contract with the State, and this Court is without

authority to enter an award based upon quantum merit.

Quite aside from the issue of whether this Court could enter an award based upon equitable principles, we find that Claimant is entitled to recover salary for the period he worked as an Administrative Assistant I at Manteno State Hospital. This precise issue was decided by this Court in *Volland v. State, 10 Ill.Ct.Cl. 715.* There the Claimant had been hired by the Superintendant of the Cicero Branch of the Illinois State Employment Service as a clerk. He worked for 64 weeks in that capacity, but was never paid. The State contended that since the Superintendant did not leave authority to hire Volland, there was no basis on which an award of salary could be made. However the Court did enter an award on the ground that the State had induced Volland to perform services for it, and had accepted those services, with knowledge that Volland had not been legally hired.

That same situation existed here. Claimant was told to report for work by the Assistant Director of the Gateway Program, and continued in his work with the full knowledge of both the Director of Personnel, and the Program Director. Further, Claimant turned down two jobs on the representations of those individuals that he would be hired for the job at Manteno. We think that Claimant reasonably relied upon the representations of the supervisory personnel that he was hired for the job of Administrative Assistant I, and it was upon their representations that he began work on January 25, and continued to perform that work through May 27, 1970. Claimant had the right to rely on the apparent authority of these individuals to bind the State of Illinois, and to assume that they were acting within the scope of their authority in hiring him. While the tech-

nical requirements of the Personnel Code were not complied with, we think that a contractual relationship was established, and that the State may not now deny that such an agreement existed.

We therefore find that Claimant is entitled to be compensated as an Administrative Assistant I from Janaury 25; 1970 through May 27, 1970. The other elements of damage Claimant seeks are not recoverable.

Claimant is therefore awarded the sum of $3,020.00.